IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARWIN DIAZ TURCIOS, | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) ) Civil No. 3:25-cv-0083 ) Judge Stephanie L. Haines |
| LEONARD ODDO, *In his official capacity as Warden of Moshannon Valley Processing Center, et al.*, | ) ) ) ) |
| Respondents. | ) ) |

## OPINION

**I.   Introduction**

Petitioner Darwin Diaz Turcios ("Mr. Diaz"), a citizen of El Salvador who is currently in immigration custody and represents that he is facing imminent removal to Mexico, requests that this Court extend its previously-granted temporary restraining order ("T.R.O.") in this matter. (ECF No. 15). Specifically, Mr. Diaz requests an extended T.R.O. barring Respondents from removing him from the United States and the Western District of Pennsylvania until either: (1) the Government moves to reopen his immigration proceedings, the Government designates Mexico as Mr. Diaz's country of removal, and any resulting proceedings before an Immigration Judge ("IJ") conclude; or (2) the Government "provides [Mr. Diaz] with a reasonable fear interview [("RFI")] before an Asylum Officer [] and [Mr. Diaz] exhausts any available administrative remedies with respect to that RFI." (ECF No. 24 at 1).

For the following reasons, the Court finds that it lacks jurisdiction over Mr. Diaz's requests, and the Court therefore DENIES his Motion. (ECF Nos. 15, 24).

**II.   Background**

Mr. Diaz was born in El Salvador in 1994. (ECF No. 6 at 10–11). He states that he came to the United States in 2012 and lived in Maryland until his detention in April 2024. (*Id.*). In April 2024, ICE arrested Mr. Diaz through a traffic stop, issued him a Notice to Appear ("NTA"), and transported him to Moshannon Valley Processing Center ("MVPC"), where he has been detained since. (*Id.* at 11).

On November 11, 2024, an IJ in Elizabeth Immigration Court granted Mr. Diaz Convention Against Torture ("CAT") deferral of removal, finding that there was a 99% chance that Mr. Diaz would be tortured by MS-13 if he were removed to El Salvador. (*Id.*; ECF No. 16 at 3). Specifically, the IJ ordered Mr. Diaz removed to El Salvador and then deferred that removal. (ECF No. 6 at 11; ECF No. 6-6 at 6). However, the IJ did not order Mr. Diaz removed to an alternative country. (ECF No. 6 at 11; ECF No. 6-6 at 6). Finally, both parties waived an appeal from the IJ's decision. (ECF No. 6 at 11; ECF No. 6-6 at 12). Therefore, according to Mr. Diaz, his removal order became final on November 21, 2024. (ECF No. 6 at 2).

On March 31, 2025, Mr. Diaz filed his Amended Habeas Petition pursuant to Title 28, United States Code, Section 2241. (ECF No. 6). Therein, he primarily advances the following two claims: (1) he was not (as of late March 2025) poised to be removed from this country in the "reasonably near future," meaning that his continued detention is unlawful, and (2) his "continued detention pending supposed third country removal efforts, without notice of whether and to which countries ICE is actually attempting to remove him, violates his due process rights." (ECF No. 6 at 13–14).

While his Amended Habeas Petition was pending before the Magistrate Judge, Mr. Diaz filed his Motion for a Temporary Restraining Order and Brief in Support on June 26, 2025. (ECF Nos. 15, 16). In those documents, Mr. Diaz represents that, on June 24, 2025, "an ICE officer

delivered a single-page document to [Mr. Diaz] titled 'Notice of Removal' stating that 'ICE intends to remove you to Mexico.'" (ECF No. 16 at 4). According to Mr. Diaz, he told the ICE officer who handed him this form that he feared returning to Mexico, and he also called his counsel to inform him that he had received this document. (*Id.* at 4–5).

In requesting a T.R.O. from this Court, Mr. Diaz argues that he "has a due process right to meaningful notice and opportunity to be heard before ICE deports him to a third country." (*Id.* at 8) (citing *Aden v. Nielson*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019)). He asserts that when "ICE attempts to remove a non-citizen to a country not designated on their removal order, they must have a meaningful opportunity to seek fear-based relief from removal to that country, consistent with the" Immigration and Nationality Act (the "INA") and the CAT. (*Id.*).

On June 26, 2025, this Court entered a T.R.O. barring Respondents from removing Mr. Diaz from the United States or transferring him outside of the Western District of Pennsylvania. (ECF No. 17 at 2). The Court did so in order to "preserve the status quo and to prevent irreparable harm to [Mr. Diaz] just so long as is necessary to develop a fuller record and to hold a hearing[.]" (*Id.* at 1).

On June 30, 2025, Respondents submitted their Response to Mr. Diaz's Motion for a T.R.O. (ECF No. 19). On July 1, 2025, the Court held a Hearing on Mr. Diaz's Motion, and Mr. Diaz submitted a Reply in Support of his request. (ECF Nos. 22, 24). Finally, on July 3, 2025, Respondents submitted their Sur-Reply. (ECF Nos. 26, 27).

Critically, in conjunction with their Response to Mr. Diaz's Motion for a T.R.O., Respondents submitted a Declaration from Deportation Officer Justin Kubeja ("Officer Kubeja"). (ECF No. 19-1). Therein, Officer Kubeja declared that, on June 24, 2025, at approximately 4:00 P.M.:

> [Mr. Diaz] was notified of his expected removal to Mexico. [He] claimed fear of removal to Mexico. As a result, [Ice Enforcement and Removal Operations ("ERO")] has halted efforts to remove him for forty-eight hours to afford him an opportunity to file a Motion to Reopen his immigration proceedings with [ERO] before the IJ.

(*Id.* at 2). According to Officer Kubeja, if a Motion to Reopen is granted, Mr. Diaz "cannot be removed as his removal order will no longer be final." (*Id.*). And if his "proceedings are reopened, he will be given the opportunity to express his fear-based claim before the [IJ.]" (*Id.*).

In his Reply, Mr. Diaz argues that the procedure articulated by the Government in the preceding paragraph does not satisfy the demands of Due Process under the Fifth Amendment. (ECF No. 24 at 6). Instead, as the Court noted earlier, Mr. Diaz requests an extended T.R.O. barring Respondents from removing him from the United States and the Western District of Pennsylvania until either: (1) *the Government* moves to reopen his immigration proceedings, the Government designates Mexico as Mr. Diaz's country of removal, and any resulting proceedings before an IJ conclude; or (2) the Government "provides [Mr. Diaz] with [an RFI] before an Asylum Officer [] and [Mr. Diaz] exhausts any available administrative remedies with respect to that RFI." (*Id.* at 1).

### III.   Analysis

For the following reasons, the Court finds that it lacks jurisdiction over Mr. Diaz's requests in his Motion for a T.R.O. Accordingly, the Court cannot and does not address Mr. Diaz's arguments regarding the process to which he is due relative to his potential removal to Mexico.[1]

---

[1] On this score, while the Court is not reaching the merits of Mr. Diaz's Due Process claims, it does note that the Government has afforded him an opportunity to file a Motion to Reopen his immigration proceedings. *See supra* Section II. Mr. Diaz may or may not have elected to take advantage of that opportunity, but Respondents did provide it. Further, the Third Circuit has at least certain authority to hear a petition for review from the denial of a Motion to Reopen immigration proceedings. *Pllumi v. AG U.S.*, 642 F.3d 155, 157 (3d Cir. 2011). Of course, this Court in no way purports to predict how any other judicial body would handle Mr. Diaz's claims if he were to present them to that body. The Court's point is simply that Respondents have in fact provided Mr. Diaz a mechanism by which *he at least may attempt* to have his Due Process claims heard by an Article III court. *Cf. Yakubov v. AG US*, 586 F. App'x 86 (3d Cir. 2014) (holding that, where an alien was ordered removed to Israel, or in the alternative, Russia, that alien could move to reopen his immigration proceedings if he were not ultimately removed to Israel and needed to argue that he would face torture in Russia).

As the Supreme Court has explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"):

> [A]uthorizes noncitizens to obtain direct "review of a final order of removal" in a court of appeals. 110 Stat. 3009-607, 8 U.S.C. § 1252(a)(1). [I]n the deportation context, a "final order of removal" is a final order "concluding that the alien is deportable or ordering deportation." § 1101(a)(47)(A). The Act also states that judicial review "of all questions of law and fact ... arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). In other words, a noncitizen's various challenges arising from the removal proceeding must be "consolidated in a petition for review and considered by a court of appeals." *INS v. St. Cyr*, 533 U.S. 289, 313, and n. 37 (2001).

*Nasrallah v. Barr*, 590 U.S. 573, 579–80 (2020) (cleaned up). Further, the REAL ID Act of 2005, "clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals." *Id.* at 580 (citing 8 U.S.C. § 1252(a)(5)).[2]

As a result of Sections 1252(a)(5) and (b)(9), district courts "lack jurisdiction to review most claims that even relate to removal ... [b]ecause judicial review of a final order is available only in the court of appeals, district courts cannot review [] 'arising from' claims either." *E.O.H.C. v. Sec'y U.S. DHS*, 950 F.3d 177, 184, 186 (3d Cir. 2020) (holding, however, that Section 1252(b)(9) does not pose a jurisdictional bar "when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal"); *see also Tazu v. AG U.S.*, 975 F.3d 292, 299 (3d Cir. 2020) ("[T]he legal questions [petitioner] raises about the scope of the

---

Finally, the Court notes the following representation by Respondents in their Sur-Reply: "Even though [Mr. Diaz] has not moved to reopen his case, after [he] expressed his fear of being removed to Mexico, ICE has referred his claim to an asylum officer on July 2, 2025." (ECF No. 27 at 8 n.1).

[2] The Court also notes that "§ 2242(d) of FARRA provides for judicial review of CAT claims as part of the review of a final order of removal pursuant to section 242 of the [INA.]" *Nasrallah*, 590 U.S. at 580 (internal quotation marks and citation omitted).

Attorney General's discretion to re-detain him *are bound up with (and thus 'aris[e] from')* an 'action taken' to remove him[.]") (emphasis added).

Clearly, as Mr. Diaz recognizes, he has a final order of removal to El Salvador. *See supra* Section II. The question before this Court therefore becomes the following—pursuant to the foregoing legal provisions, is Respondents' decision to remove Mr. Diaz to Mexico "bound up with" that final removal order such that this Court lacks jurisdiction to consider Mr. Diaz's requests in his Motion for a T.R.O.? For the following reasons, the Court answers that question in the affirmative.

In *Tonfack v. AG U.S.*, 580 F. App'x 79 (2014), the Third Circuit was tasked with resolving an appeal from a District Court's decision to dismiss a Section 2241 Habeas Petition for lack of jurisdiction. Specifically, the Petitioner, Gabin Tonfack ("Mr. Tonfack"), was a citizen of the Ivory Coast. *Id.* at 79. On April 16, 2013, an IJ ordered Mr. Tonfack removed from the United States, granted Mr. Tonfack's withholding of removal as to the Ivory Coast, and failed to identify a country to which Mr. Tonfack would be removed. *Id.* at 80. Further, the parties waived their right to appeal the IJ's decision, and the time to take an appeal had "long since expired" when the Third Circuit issued its decision. *Id.*

Thus far, the Court observes that *Tonfack* is remarkably similar to the case now before it. And the similarities do not end with the previous paragraph.

Indeed, while Mr. Tonfack was in ICE custody, ICE obtained travel documents to remove him to Cameroon. *Id.* However, when ICE attempted to put him on a plane bound for Cameroon, he forcibly resisted. *Id.* He also filed his Section 2241 Petition, claiming that "he ha[d] no connection to Cameroon, and the travel documents, which state he was born and lived there before entering the United States, [were] inaccurate." *Id.* He therefore asked the District Court to enter an

order barring ICE from removing him to Cameroon, but the District Court dismissed the case for lack of jurisdiction[3], and Mr. Tonfack appealed to the Third Circuit. *Id.*

Around the time of his appeal, Mr. Tonfack asked the IJ to reopen his proceedings "so that he could apply for relief under [CAT] with regard to Cameroon, and on June 18, 2013, the IJ granted this request." *Id.* A hearing was also scheduled on Mr. Tonfack's reopened action, "but, for reasons that are not clear, [he] voluntarily terminated that action." *Id.*

On appeal from the dismissal of Mr. Tonfack's Section 2241 Petition, the Third Circuit disagreed with Mr. Tonfack's argument that his Petition was "independent of his removal order[.]" *Id.* at 81. In rejecting this contention, the Third Circuit reasoned as follows:

> Critically, [Mr.] Tonfack argues not just that the specific Cameroonian travel documents are invalid, *but that Cameroon is not a proper country of removal. This issue is encompassed in the removal order*—the IJ is obligated to designate a country of removal as part of the removal proceedings. The fact that the IJ here may have neglected to select a country or countries for removal does not change this analysis[.]

*Id.* (emphasis added) (cleaned up). In short, the Third Circuit concluded that Mr. Tonfack's Habeas Petition (which sought an order barring his removal to Cameroon) challenged his notice of removal, meaning that the District Court lacked jurisdiction to consider it. *Id.*

The upshot of the foregoing is that there is precedent from the Third Circuit finding that, when an alien: (1) has a final order of removal, (2) that final order of removal did not designate an alternate country of removal, (3) that alien is slated for removal to an alternate country, and (4) the alien has objections to the alternate country, the alien's challenge to removal to the alternate country is encompassed within the removal order. That precedent applies precisely to the situation now before this Court—Mr. Diaz (1) has a final order of removal, (2) that final order did not

---

[3] The District Court found that it lacked jurisdiction due to 8 U.S.C. § 1252(a)(5). *Tonfack v. Holder*, No. 3:13-CV-1886, 2013 WL 5570232 (M.D. Pa. Oct. 9, 2013).

7

designate an alternate country, (3) Mr. Diaz is now slated for removal to Mexico, and (4) Mr. Diaz wants to challenge his removal to Mexico, meaning that his challenge to his removal to Mexico is encompassed within the removal order entered in November 2024.[4]

In short, the Court holds that Mr. Diaz's removal to Mexico is closely "bound up with" his removal order such that this Court lacks jurisdiction over his Motion for a T.R.O. *Tazu*, 975 F.3d at 299; *see also DHS v. D.V.D.*, 145 S. Ct. 2153 (2025) (noting that it had stayed the district court's order "preliminarily enjoining the Government from removing 'any alien' to a 'country not explicitly provided for on the alien's order of removal' without following certain procedures designed to enable an alien to seek relief" under CAT pending disposition of any appeal and petition for writ of certiorari); *C.R.L. v. Dickerson*, Case No. 4:25-CV-175 (CDL), 2025 WL 1800209 (M.D. Ga. June 30, 2025) (reaching the same conclusion as this Court on highly similar facts). Indeed, this Court sees no reason why the type of relief that Mr. Diaz now seeks cannot be meaningfully considered by the Third Circuit "alongside review of a final order of removal." *E.O.H.C.*, 950 F.3d at 186.[5] Therefore, the Court holds that the jurisdictional bar enunciated in 8 U.S.C. § 1252 (a)(5), (b)(9) precludes this Court from further considering Mr. Diaz's present requests for relief in his Motion for a T.R.O.[6]

## IV.   Conclusion

---

[4] Although *Tonfack* is a not-precedential opinion, it represents the legal analysis of three judges who sit on the appellate body above this Court. Further, this Court agrees with the analysis therein and finds that it accords with binding Third Circuit Precedent. Accordingly, the Court follows *Tonfack* here.

[5] At bottom, Mr. Diaz is challenging the constitutionality of the document(s) directing that/informing him that he will be removed from this country to Mexico. This appears to the Court to be very much the type of scenario that Section 1252 was enacted to bar this Court from considering.

[6] For much the same reasons, the Court likewise finds that Section 1252(g) bars this Court's consideration of Mr. Diaz's requests in his Motion for a T.R.O. *Tazu*, 975 F.3d at 298–99 (noting that that Section "strips us of jurisdiction to review the Attorney General's 'decision or *action* ... to ... execute [a] removal order[]'" and finding that re-detention for removal purposes "attacks a key part of executing [a petitioner's] removal order") (emphasis added)).

For all of the foregoing reasons, the Court will deny Mr. Diaz's Motion for a T.R.O. (ECF No. 15, 24). Whatever the merits of Mr. Diaz's Due Process claims, this Court is barred by law from considering them. The Court will therefore leave it to other judicial bodies with jurisdiction over his claims to assess whether the process that the Government is currently providing to Mr. Diaz complies with the United States Constitution.

An appropriate Order follows.

DATED: July 10, 2025

                                            STEPHANIE L. HAINES
                                            U.S. DISTRICT COURT JUDGE